## THE CEPHALONIA.[1]

FOOTE v. THE CEPHALONIA. SPARKS v. SAME. EASEMAN v. SAME. FELTY v. CUNARD STEAM-SHIP CO. GREEN v. SAME.

*(District Court, E. D. New York. July 9, 1886.)*

COLLISION—STEAMER AND TUG—OVERTAKING VESSEL—LOSS OF LIFE AND PROPERTY—LIABILITY.

The tug Glen Island, while proceeding down the bay of New York, was overtaken and run down by the steam-ship Cephalonia, of the Cunard line. The tug was sunk, and several lives were lost. Prior to the collision the tug did not alter her course. On suit brought against the steam-ship to recover for the loss of life and property, *held*, that the Cephalonia, as the overtaking

---

[1] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

vessel, was bound to have avoided the tug; that the fact that she blew whistles in time to enable the tug to get out of her way did not furnish her any excuse for the collision; and that she was solely responsible for the collision.

In Admiralty.

*Butler, Stillman & Hubbard,* for William H. Foote.

*Hyland & Zabriskie,* for William Sparks and Mary E. Felty.

*Carpenter & Mosher,* for Oliver Green.

*Owen & Gray,* for the Cephalonia and the Cunard Steam-ship Co.

BENEDICT, J. These actions, which were tried together, present the question whether the sinking of the tug Glen Island by the steamer Cephalonia, on the morning of February 27, 1884, and the consequent loss of life and of property, arose from faulty management of the steamer, or by faulty management of the tug. The accident occurred in broad daylight. Both vessels were bound down the bay of New York. The tug was proceeding down the bay. The steamer was behind and overtaking the tug. The tug was seen by those in charge of the steamer. When about half way between Oyster island and Robbins Reef light, and in plain sight, she was run over and sunk by the steamer's stem striking the stern of the tug, and capsizing her. Of course, the burden is upon the steam-ship to excuse herself. The excuse she makes is that the tug suddenly attempted to cross the course of the steamer, and in so doing threw herself so suddenly under the steamer's bow that it was impossible for the steamer to avoid her. The testimony fails to prove this defense. It is, no doubt, true that, at the moment of capsizing, the tug lay partly across the steamer's bows. That was caused by the fact that, when the steamer struck the tug's stern, the weight of the steamer turned the tug around in the water, and so brought part of her under the steamer's bow. But it is not proved that there was any change in the direction of the tug's course which brought her under the steamer's bow. That the tug had, before the steamer appeared, deviated from a straight course, avails not to excuse the steamer. That fact is entitled to consideration in determining whether, when the steamer approached near to her, the tug changed her course; but it is not sufficient, in the face of the testimony to the contrary, to justify the conclusion that the tug changed her course at the moment of the collision.

The cause of the collision doubtless was the wrongful assumption on the part of those in charge of the steamer that the tug would be aware of the approach of the steamer from behind, and, when the steamer drew near, get out of her way. As it happened, the tug had no knowledge of the presence of the steamer behind her until collision was inevitable. The assumption upon which the steamer was navigated accordingly failed, and the collision was the result.

If, as proved, the steamer gave the tug whistles in time to enable the tug to get out of the steamer's way, the case of the steamer is not helped. The duty of the tug, whistles or no whistles, was to hold

her course. It was no part of her duty to get out of the way of the steamer. If, as the steamer approached the tug from behind, the tug held her course, she discharged all her duty; and that was what she did. While in performance of that duty, she was run over and sunk by the steamer. No doubt can be entertained as to the liability of the steam-ship for the damages that resulted.

Decrees must therefore be entered in the several cases in favor of the libelants, with an order of reference to ascertain damages.